Charles Rodman CAMPBELL, Petitioner–Appellant,

v.

James BLODGETT, Superintendent of Washington State Penitentiary, Walla Walla, Washington; Kenneth Eikenberry, Attorney General of the State of Washington, Respondents–Appellees.

No. 92–35360.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 16, 1992.

Opinion Filed Dec. 24, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc June 8, 1993.

David M. Otto, Betts, Patterson & Mines, Seattle, WA, for petitioner-appellant.

Paul D. Weisser, and John M. Jones, Asst. Attys. Gen., Olympia, WA, for respondents-appellees.

Before HUG, POOLE, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Charles Campbell appeals from the district court's dismissal of his third petition for federal habeas relief from his state conviction of three counts of aggravated first degree murder and sentence to death. The district court had jurisdiction to consider the petition under 28 U.S.C. §§ 2241(a) and 2254, and this Court has jurisdiction over Campbell's appeal under 28 U.S.C. §§ 1291 and 2253. We affirm.

I

Procedural Background

The facts of this case are set out in *State v. Campbell*, 103 Wash.2d 1, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094, 105 S.Ct. 2169, 85 L.Ed.2d 526 (1985), and *Campbell v. Kincheloe*, 829 F.2d 1453 (9th Cir.1987), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Campbell's 1982 conviction on three counts of aggravated first degree murder and his sentence to death became final on April 29, 1985. Thereafter, Campbell sought state postconviction relief by motion for stay of execution. The state court, treating it as a habeas petition, denied the motion one week before Campbell's scheduled execution. In July 1985, he began his first round of federal habeas corpus proceedings. This first petition raised 61 claims, but since 40 had not been raised in state court as required by *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), Campbell amended the petition to present only the 21 exhausted claims. After an evidentiary hearing, the petition was denied on the merits; this Court affirmed the denial in 1987, and the Supreme Court denied certiorari in 1988. *Campbell v. Kincheloe (Campbell I)*, 829 F.2d at 1467; 488 U.S. at 948, 109 S.Ct. at 380.

Campbell sought further state relief in 1989, which was denied. *State v. Campbell,* 112 Wash.2d 186, 770 P.2d 620 (1989). He then petitioned the federal court a second time for habeas corpus relief. The second petition was also denied, and Campbell's appeal, initially denied in 1992, is pending rehearing *en banc* in this Court. *Campbell v. Blodgett,* 978 F.2d 1502 (9th Cir.1992) (*Campbell II*), *vacated, Campbell v. Blodgett,* 978 F.2d 1519 (9th Cir.1992) (Order Granting Rehearing en Banc). Pending the appeal from the denial of his second federal petition, Campbell filed a third petition for relief in state court. The Washington Supreme Court denied this petition on the merits. *In re Campbell,* No. 57406–5 (Wash. March 21, 1991). Campbell filed yet a third federal habeas petition in 1991, and Respondents moved to dismiss the petition as successive and abusive. The district court dismissed the third petition, concluding that all the claims raised therein were successive or an abuse of the writ. The court also ruled that at least two of the claims failed on the merits. *Campbell v. Blodgett,* No. C91–1420C (W.D.Wash. March 9, 1992). The district court granted Campbell a certificate of probable cause to appeal.

II

Successive and Abusive Claims

Campbell raised nine claims in his third petition, eight of which relate to jury instructions and the prosecutor's remarks during Campbell's sentencing proceeding. The ninth alleges a denial of "meaningful appellate review." Campbell asserts that these claims constitute previously unexhausted issues, now disposed of on the merits by the Washington Supreme Court. Respondents argue that in one form or another, all of Campbell's claims either have been previously heard and rejected, or could and should have been raised in prior petitions.

The district court correctly identified the appropriate standard governing the resolution of the question whether the claims were successive and an abuse of the writ. A claim is successive if it was raised in an earlier petition, or if it fails to raise a ground

for relief that is new or different than a claim raised in an earlier petition and previously determined on the merits. *See* 28 U.S.C. §§ 2244(b), 2254 foll. Rule 9 (1988). A "ground" is "sufficient legal basis for granting the relief sought;" a different factual basis or argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief and is successive. *Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 1077–78, 10 L.Ed.2d 148 (1963). Claims that are not successive may nevertheless be an abuse of the writ. As explained in *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), a subsequent habeas petition which raises new grounds need not be considered if the petitioner has, through deliberate abandonment or inexcusable neglect, abused the writ. *See id.* 499 U.S. ——, 111 S.Ct. at 1466–70.

■ When a district court denies consideration of the merits of a petition on the ground that it is abusive or successive, we review for abuse of discretion. *Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963); *Neuschafer v. Whitley,* 860 F.2d 1470, 1474 (9th Cir.1988), *cert. denied,* 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989). A court abuses its discretion when it bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact. *Id.*

Campbell agrees that the district court selected the appropriate legal standard, but argues that the court erred in rejecting these as successive claims and abuses of the writ. Campbell's argument that the district court erroneously determined his claims to be successive and abusive rests on two contentions: (a) after the state reached the merits of his claims, the district court was bound to consider their merits, and (b) the conditions permitting denial without consideration of the merits, set forth in 28 U.S.C. § 2244(b),[1] were not met. We conclude that the district court did not abuse its discretion in either respect.

## A

■ We reject Campbell's argument that the district court should have reached the merits of Campbell's claims simply because the Washington Supreme Court found "good cause" to do so. First, nothing in the state court's order intimates a view that the merits of the claims present good cause for review. Quite to the contrary, the Washington Supreme Court implied that Campbell's claims were in fact successive and abusive. It reached the merits nevertheless under its "good cause" exception for doing so. *In re Campbell,* No. 57406–5 at 2 (Wash. May 15, 1991) (Order Denying Reconsideration).

Second, the determination to reach the merits was made for reasons specific to the state proceedings that lack parallel significance in the federal courts. In stating that the "unique procedural history of this case" qualified as "good cause" to reach the merits of Campbell's claims, the court was referring to the novelty of the state's postconviction proceedings for defendants facing execution.

> Mr. Campbell was the first capital defendant prosecuted under RCW 10.95 to file postconviction pleadings. When he initiated that process in 1985, procedures had not yet been developed to deal with the unique aspects of such cases.... [Campbell] has challenged the fairness of the 1985 proceeding.... [W]e considered the merits of all of his present claims in order to put to rest his complaints about that earlier proceeding.

*Id.* at 2.

By contrast, Campbell is not the first capital defendant to seek postconviction relief in the federal courts, and the procedures for dealing with such cases are well established. Campbell has fully utilized these procedures, and has received the most comprehensive review of his claims to which he is entitled. We need not reach the merits to assure Campbell, and ourselves, that his claims have been fully considered. Indeed, upon deter-

---

1. "[A] subsequent application for a writ of habeas corpus ... need not be entertained ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly-asserted ground or otherwise abused the writ." 28 U.S.C. § 2244(b) (1988).

mining that claims raised in a habeas petition are successive or abusive, we may not do so; respect for the finality of convictions, and the significant costs of federal habeas review, forbid it.

> [A] court may not reach the merits of: (a) *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims.

*Sawyer v. Whitley*, — U.S. —, —, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations omitted). Campbell's claims are not rendered less successive in federal court, or less an abuse of the power of the federal writ of habeas corpus, by the state court's view of its own postconviction proceedings. In other words, what constitutes "good cause" to review successive and abusive claims—in the federal idiom, cause and prejudice—is a matter of federal law.

Which leads to the final point: The district court was not required by any principles of comity and federalism to defer to the judgment of the Washington Supreme Court that its treatment of Campbell's previous *state* filings for postconviction relief constituted "good cause" to review the claims on the merits. Counsel's arguments regarding procedural bars and deferential federal review of state determinations miss the mark. The state court's determination to reach the merits may, like the lifting of a procedural bar, permit a federal court to do the same, *see Ylst v. Nunnemaker*, — U.S. —, —, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991), but it most certainly does not compel it. We conclude that the district court did not abuse its discretion on that ground.

### B

■ We also reject Campbell's assertion that the factors permitting a court to dismiss a habeas petition under 28 U.S.C. § 2244(b) are not met. Assuming, *arguendo,* that the "facts and circumstances which comprise the unique procedural history of Mr. Campbell's case have never been adjudicated," these facts are not the ground upon which the application for relief is predicated. They are offered to induce the court to *consider* the grounds alleged for relief. That such facts have not been adjudicated does not preclude the application of section 2244(b). The district court found that the grounds on which the application is predicated—the jury instructions and prosecutor's argument—were previously adjudicated. As explained more fully below, with the exception of the claim regarding appellate review, this determination was not an abuse of discretion.

In sum, we conclude that the district court did not abuse its discretion in dismissing Campbell's third petition as successive and abusive, rather than considering its merits.

### III

### The Jury Instructions

### A

■ Campbell challenges Jury Instruction No. 5 in the penalty phase, which instructed the jury that it must find beyond a reasonable doubt that there were not "sufficient mitigating circumstance*s* to merit leniency" (emphasis added). He claims that by repeatedly phrasing the instruction as to mitigating evidence in the plural, the instruction prohibited the jury from giving effect to "one mitigating circumstance, no matter how persuasive," in violation of *Sumner v. Shuman*, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Pet. for Writ at 31–32.

The district court found this claim successive, as Campbell raised three claims regarding these provisions of Washington's capital sentencing statute in his first petition and three similar claims in his second petition. It also found that if the claim could somehow be viewed as new, it was an abuse of the writ. We agree in both respects.

Campbell argues that "the present contention that his jury was improperly instructed presents a new and different ground from his previous challenge to the validity of the Washington statute." Brief for Pet'r at 43. The jury instructions in this case were taken

from the statute verbatim, *see* Rev.Code. Wash. § 10.95 (1990), and Campbell has already challenged the statute in two prior petitions.[2] He has argued that the statute and the instructions worded in its language: (1) fail to adequately guide jury discretion; (2) create a mandatory presumption in favor of the death penalty; (3) fail to provide a reliable standard for imposition of the death penalty; and (4) limit the factors the jury could consider in mitigation. This latest claim is almost an exact repetition of the last, except that Campbell now characterizes the limitation imposed as one of quantity, rather than quality.[3]

■■■ The grounds for relief, or legal basis for granting the petition, underlying all of these claims are the same: the constitutional requirements (1) that capital punishment not be imposed in an arbitrary and capricious manner, *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and (2) of individualized sentencing in capital cases, *Lockett v. Ohio*, 438 U.S. at 604–05, 98 S.Ct. at 2965; *Sumner v. Shuman*, 483 U.S. at 78, 107 S.Ct. at 2723. A petitioner may not create a different ground merely by alleging different facts, asserting different legal theories, or couching his argument in different language. *Sanders v. United States*, 373 U.S. at 16, 83 S.Ct. at 1077–78. Since both grounds have been raised several times and have been ruled upon on the merits, the district court did not abuse its discretion in refusing to permit Campbell to relitigate them. Moreover, his argument is purely legal, and was available at the time both the first and second petitions were filed. The bringing of these claims, all directed essentially at the same statute upon the same grounds, in this piecemeal fashion is an abuse

of the writ that federal courts must not tolerate.

**B**

■■■ Campbell challenges Jury Instruction No. 1 of the penalty phase, which instructed the jurors not to permit *prejudice* to influence them. It omitted mention of *sympathy*, which was included in the same instruction during the guilt phase, thereby arguably permitting the jurors to be influenced by sympathy. Campbell argues that the jury should not be permitted to consider sympathy even for the defendant, as its decision must be "based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (Opinion of Stevens, J.). This argument attempts to cast the claim as a challenge to the facially neutral instruction, masking the underlying claim raised in his brief—that, as applied in his case, the instruction permitted the jury to be influenced by sympathy for the victims, rather than for him. This argument the district court found successive, having been raised in Campbell's first petition.

Campbell argues that "[p]ermitting the jury to base its decision on sympathy and emotion violates ... the requirement that the sentencer's discretion be 'directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" Brief for Pet'r at 48 (quoting *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932–33, 49 L.Ed.2d 859 (1976) (opinion of Stewart, J.)). His argument illustrates that this claim rehashes various of Campbell's attacks on the jury instructions' failure to limit sentencing discretion. As demonstrated above, such a claim is successive. Campbell's first petition

---

**2.** Campbell challenged section 10.95.070 in his first petition; in his second, he unsuccessfully sought to attack that section again, and also section 10.95.060(4). His third petition points once again to section 10.95.060(4).

**3.** In January 1990, pending decision of the appeal from the denial of his second petition, Campbell sought to withdraw the three jury instruction/death penalty statute issues without prejudice to later relitigating them in federal court, so that he could resubmit them to the Washington Supreme Court. Pet'r Mot. to With-

draw from Submission Certain Issues on Appeal at 2, 3, *Campbell v. Blodgett*, 978 F.2d 1519 (9th Cir.1992). We denied the motion. *Campbell v. Blodgett*, 940 F.2d 549, 549 (9th Cir.1991) (Order). Those issues were presented in his third state petition and denied on the merits, and it is those same issues which he seeks to raise here, in a different guise. Campbell's attempt to withdraw the claims from the second petition so that he could relitigate them here after the state court revisited the issues is, in effect, an admission that the claims now presented are successive.

expressly claimed a failure to adequately guide jury discretion.

Furthermore, the underlying ground for relief—that the jury was improperly influenced by emotion, in violation of due process—was fully considered and rejected in Campbell's first petition, by means of his attack on the prosecutor's remarks. *See Campbell v. Kincheloe,* No. C85–1352 (W.D.Wash. Jan. 21 & Feb. 12, 1986), *aff'd,* 829 F.2d 1453, 1457–61 (9th Cir.1987), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Although Campbell now alleges a different source of prejudice—the trial court's instruction, rather than the prosecutor's remarks—the complaint is the same. It presents no new ground for relief.

### C

Campbell next complains that the jury was instructed in the statutory language of section 10.95.070 that it could "consider any relevant factors" and was not given the limiting instruction mandated by *State v. Bartholomew,* 98 Wash.2d 173, 654 P.2d 1170 (1982), *vacated,* 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983), *adhered to on remand,* 101 Wash.2d 631, 683 P.2d 1079 (1984), that such consideration was limited to relevant *mitigating* factors. Absent the limiting instruction, he argues that the instruction was unconstitutionally vague and failed to adequately guide the jury's determination. He also complains that the jury was not instructed to consider his character, the record, or the circumstances of the offense as mitigating circumstances. The district court found both claims successive, having been raised in both the first and second petitions.

On appeal, counsel attempts to recharacterize the complaints as a claim that the jury instructions "imposed a barrier to the consideration of the range of permissible mitigating evidence." Brief for Pet'r at 45. Campbell's first petition argued that the instructions failed to provide adequate standards for channeling the jury's discretion. His second petition claimed that the instructions limited the factors the jury could consider in mitigation. We agree with the district court that either articulation of the complaint raises the same grounds for relief as the two preceding petitions. The claim is successive.

### IV

#### The Prosecutor's Remarks

During penalty phase arguments, while arguing to the jury that Campbell was not suffering from any mental disease or defect, the prosecutor remarked on the jury's observations of Campbell during the proceedings. Campbell argues that the prosecutor's argument was improper because in drawing attention to his courtroom demeanor, it encouraged the jury to consider his failure to testify and his ability to represent himself at trial. He contends that the jury impermissibly imposed the death penalty on the basis of this constitutionally-protected behavior. Campbell also claims that the prosecutor's assertions of uncontradicted evidence in the record impermissibly commented upon his right to remain silent.[4]

The district court determined that Campbell's brief in support of his first petition attacked the trial court's failure to instruct the jury that it could not consider his failure to testify, but not the prosecutor's remarks in that respect. Because the argument was available to him earlier, the district court concluded that the claims were an abuse of the writ. It also concluded that because the claims raise "purely legal arguments, Mr. Campbell cannot expect to establish cause for his failure to raise them before." *Campbell v. Blodgett,* No. C91–1420C, at 10 (W.D.Wash. March 9, 1992). Nevertheless, the district court went on to address the claims' merits.

At the time of Campbell's earlier petitions, this Circuit would not find a subsequent habeas petition abusive where it presented a new claim that had been deliberately withheld from an earlier petition in a good faith belief it would have been barred as unex-

---

4. In his petition to the district court, Campbell also claimed that the prosecutor improperly commented on his future dangerousness and failed to notify him that the subject would be argued to the jury. The district court determined that these claims were successive, having both been raised and adjudicated in his first petition. Campbell has abandoned these claims on appeal.

hausted. Such a claim could be brought in a later federal habeas petition after exhausting state remedies. *Neuschafer v. Whitley,* 860 F.2d 1470, 1475–76 (9th Cir.1988) (citing *Tannehill v. Fitzharris,* 451 F.2d 1322, 1323 (9th Cir.1971)), *cert. denied,* 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989). *McCleskey v. Zant* makes clear that this result does not, however, follow automatically. *See* 499 U.S. at ——, 111 S.Ct. at 1468. To justify this costly litigation strategy, be it deliberate choice, procedurally-constrained decision, or neglect, a petitioner must show cause for the omission and prejudice therefrom. *Id.* 499 U.S. ——, 111 S.Ct. at 1470.[5]

We assume without deciding that Campbell could show cause and prejudice for his failure to raise these claims in his first federal habeas petition.[6] That petition was filed under circumstances similar to those of *Neuschafer:* (1) once his conviction became final, Campbell acted expeditiously to seek state postconviction relief; (2) the Washington Supreme Court refused to stay imposition of Campbell's death sentence and refused to grant his newly-appointed counsel sufficient time to review the record to identify and exhaust all of his federal constitutional claims; and (3) Campbell was scheduled to be executed within several days. *Cf.* 860 F.2d at 1478. New counsel appointed June 25 filed the first petition on the heels of the state court's denial of postconviction relief on July 18, facing an execution date of July 25.[7]

Campbell offers no persuasive explanation, however, as to why this claim was not presented in his second petition. This petition was filed under circumstances more akin to those of *Antone v. Dugger,* 465 U.S. 200, 104 S.Ct. 962, 79 L.Ed.2d 147 (1984) (per cu-

riam). In that case, the petitioner allowed nearly two years to elapse between the affirmance of his conviction and the filing of his first motion for postconviction relief in the state courts. *Id.* at 206 n. 4, 104 S.Ct. at 965 n. 4. The Court rejected as meritless the argument that he could not have been expected to present the new claims dismissed as abusive in his earlier petition because his counsel "was appointed when execution was imminent and therefore did not have time fully to familiarize himself with the case." *Id.* Campbell's stay of execution entered in July, 1985 was in place for more than three years pending final decision in *Campbell I.* During that time, Campbell was represented by counsel, who did not withdraw until the appeal was denied. Since that counsel had attempted to raise the claim on appeal of the first petition, Campbell cannot contend that he was unaware of the claim. Yet during that time, no action was taken to obtain further relief in state or federal court.[8] After certiorari was denied and this court dissolved the stay of execution on January 25, 1989, the state court issued a death warrant scheduling Campbell's execution for March 30, 1989. Only then did Campbell commence his flurry of filings, filing a motion for a stay of execution, an appeal of the warrant, a motion for appointment of counsel, a second federal habeas petition, and a motion for a stay of execution by the federal court, all within the month of March.

"When a petitioner has ample time to seek collateral relief but inexplicably waits until the eve of execution to do so, he should not be heard to complain that time constraints prevented his counsel from identifying and exhausting all claims in time to include them

---

5. *McCleskey* does not establish a new rule within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and therefore does apply to this habeas petition. *Harris v. Vasquez,* 949 F.2d 1497, 1512 (9th Cir.1991) (on denial of rehearing en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).

6. Campbell's first petition challenged numerous aspects of the prosecutor's penalty phase argument, claiming that the prosecutor had improperly appealed to the jury's passion and prejudice. On appeal from the denial of that petition, he attempted to add an argument that the prosecu-

tor had improperly commented on his failure to testify, but we refused to consider the claim as it was raised for the first time on appeal and not exhausted. *See* 829 F.2d at 1455–56 n. 1.

7. We note, however, that these claims are not among the 40 identified but unexhausted claims initially presented in his first federal petition.

8. Campbell did seek appointment of counsel to litigate the unexhausted issues, but only after the appeal was denied and his pro se petition for certiorari was pending, more than three and one half years later.

in a single federal habeas petition." *Neuschafer*, 860 F.2d at 1481 (Alarcon, J., concurring). We conclude that Campbell has not shown cause for his failure to raise these claims in his second petition. While the claims appear to be meritless in any case, we hold that they are an abuse of the writ and warrant no further review.

## V

### State Appellate Review

 Campbell argues that he was denied meaningful appellate review of his sentence by the Washington Supreme Court, because it did not independently review the record for evidence that his death sentence was imposed through passion and prejudice, as required by state law. He adds, however, that the Washington court did not review the record for such a claim because defense counsel failed to present evidence or briefing to that effect. The district court concluded that this claim merely reargues the ineffective assistance of counsel claim previously raised in Campbell's second petition, because any failure to consider evidence resulted from defense counsel's omission. The propriety of this determination is not self-evident.

 The Washington death penalty statute requires the Washington Supreme Court to review each death sentence imposed to determine "whether the sentence of death was brought about through passion or prejudice." Wash.Rev.Code §§ 10.95.100, .130(2)(c) (1991); *State v. Dodd*, 120 Wash.2d 1, 838 P.2d 86, 92–93 (1992). The statute provides that sentence review shall be consolidated with any appeal, and that counsel "may" submit briefs and oral argument. Wash.Rev.Code § 10.95.130(1) (1991). This suggests that the court's duty to review is indeed independent of any submission by

counsel. *Cf. Dodd*, 838 P.2d at 100 (statutory sentence review is mandatory and may not be waived). In affirming Campbell's conviction and sentence, the sum total of the state court's discussion of its inquiry, analysis and finding pursuant to section 10.95.130(2)(c) was as follows:

> Third, no evidence *was presented* to support the proposition that [Campbell's] sentence was brought about through passion or prejudice. The selection of a jury from Spokane significantly lessened the local fervor.

*State v. Campbell*, 103 Wash.2d 1, 691 P.2d 929, 946 (1984) (emphasis added). Campbell claims that although the statute mandates an "independent" review, the court's statement reveals that it was looking to counsel to present evidence. Furthermore, the court's opinion implied that the only source of such prejudice was eliminated by the change of venue for the jury venire. This demonstrates, according to Campbell, that the court relied on an irrelevant factor in making its determination, because "local fervor" prior to jury selection is irrelevant to passion and prejudice arising from the manner in which evidence, argument, and instruction were presented during the proceeding. These claims challenge the court's actions, not defense counsel's. We conclude that the district court erred in characterizing this claim of inadequate appellate review as one of ineffective assistance of counsel. The district court therefore abused its discretion in denying the claim as successive on that basis.[9]

 It is not absolutely clear that Campbell has presented this precise claim to the state court for adjudication. In his third petition to the state court for relief, Campbell argued that his sentence had not received meaningful appellate review for proportionality; he did not allege failure to review for evidence of passion and prejudice.[10]

---

**9.** The district court apparently adopted the state's analysis of the claim in this respect. *See* Resp't Brief on the Merits at 19–23, *Campbell v. Blodgett*, No. C91–1420C (W.D.Wash. March 9, 1992). The state obviously missed the thrust of Campbell's claim. It argued that appellate counsel's assistance was not prejudicial, asserting "[m]oreover, [the statute] requires the Washington Supreme Court to review the record of each capital case.... Thus, *even if appellate counsel*

*does not specifically raise such a claim, the court will nevertheless review the record for evidence* that passion and prejudice played a role in the jury's verdict." *Id.* (emphasis added). The claim is that the court failed to do precisely that.

**10.** Section 10.95.130 also mandates review of the proportionality of a capital sentence. § 10.95.-130(2)(b). Campbell could not raise this claim here, however, as there is no federal right to

The Washington Supreme Court, however, ruled on the broader ground underlying his claim: whether the statutory review he received was meaningless. Accordingly, we consider this claim exhausted.[11]

▇▇▇▇ Nevertheless, it affords no basis for granting Campbell's petition. As the Supreme Court has stated time and again, federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire,* ── U.S. ──, ──, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). Campbell's complaint of an alleged "failure on the part of the Washington Supreme Court to fulfill its statutory mandate," Petitioner's Reply Brief at 17, is not cognizable in federal habeas proceedings.

Campbell seeks to avoid this rule by characterizing the Washington court's action as a deprivation of a liberty interest protected by the Due Process Clause, relying upon *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). *Hicks* recognized that state laws which guarantee a criminal defendant procedural rights at sentencing, even if not themselves constitutionally required, may give rise to liberty interests protected against arbitrary deprivation by the Fourteenth Amendment's Due Process Clause. 447 U.S. at 346, 100 S.Ct. at 2229–30; *see Clemons v. Mississippi,* 494 U.S. 738, 746–47, 110 S.Ct. 1441, 1447–48, 108 L.Ed.2d 725 (1990); *Rust v. Hopkins,* 984 F.2d 1486, 1493 (8th Cir.1993). We agree that sections 10.95.100 and 10.95.130 of the Washington Code create for Campbell a liberty interest in having the Washington Supreme Court review and make particular findings before affirming his death sentence, whether or not he has submitted evidence or argument on those points. We do not understand Respondents to disagree. *See supra* at 521 n. 9. But there can be no claim here that Campbell suffered a "wholesale refusal to afford [him]" this procedural right. Petition for Rehearing at 11. It is clear that the Supreme Court conducted the mandated review and made the findings to which Campbell was entitled. *See* 691 P.2d at 945–46.

Campbell's argument thus devolves into a complaint regarding the manner in which state law was applied: a claim that the court's review was inadequately conducted. To the extent Campbell's claim asserts that the review was so deficient he was effectively deprived of his right, we reject his claim for the reasons below. To the extent any error alleged is less egregious, we return to our initial proposition: it is not cognizable in federal habeas corpus.

Although there is little authority on this matter, we think Campbell is not entitled to more review than he received on the matter of whether his sentence was brought about by passion or prejudice. This results from two observations: state law does not appear to require an extensive review, and there is little to suggest the review reflected in the opinion was statutorily inadequate.[12] We note first the obvious point that under the terms of the statute Campbell is entitled to mandatory appellate review only of the sentence, not the trial. Wash.Rev.Code § 10.95.100 (1991). The court's task in answering the statutory inquiries is not to "fully assess the evidence," but rather to view the evidence in the light most favorable to the prosecution and to decide the issue as a matter of law. *See State v. Rice,* 110 Wash.2d 577, 757 P.2d 889, 914–15, 917 (1988).

The court's independent review is guided by a special report required by statute containing particular information. *See* Wash.

---

proportionality review. *Pulley v. Harris,* 465 U.S. 37, 50–51, 104 S.Ct. 871, 878–79, 79 L.Ed.2d 29 (1984).

11. As it has not been raised and adjudicated in Campbell's earlier petitions, the claim is not successive; nor is it abusive, as it was omitted in good faith because unexhausted.

12. It clearly was not constitutionally inadequate; assuming the Constitution may require "some form of meaningful appellate review," we find the court's review sufficient to fulfill its essential function of ensuring the "evenhanded, rational, and consistent imposition of death sentences under law." *Pulley v. Harris,* 465 U.S. at 45, 49, 104 S.Ct. at 876–77, 878–79 (citing *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976)).

Rev.Code § 10.95.120 (1991). This report directs the court's attention to specific factors relevant to jury passion or prejudice.[13] Enumerated factors (a) through (f) suggest that the "prejudice" for which the Washington court is required to review the sentence is prejudice in the narrower sense of bias or discrimination, rather than the broader sense of procedural or evidentiary error affecting Campbell's rights. There is no suggestion that race or sexual orientation were possible sources of prejudice toward Campbell. Factors (g) through (j) suggest that "passion" means publicity or evidence tending to inflame the sympathies of the jury. The court specifically addressed the issue of prejudicial publicity.

The court's conclusion of its inquiry with the comment that "no evidence was presented to support the proposition" the sentence resulted from passion, with no discussion of the issue of prejudicial evidence, gives us pause. Standing alone, it could suggest the court did not consider whether Campbell's death sentence resulted from jury passion simply because Campbell failed to raise this issue. In a case such as this, involving savage murders of sympathetic victims, the possibility always lurks that emotion provided an impermissible basis for jury decision. The statement does not stand alone, however, and must be viewed in the context of the court's entire review.

The sentence review is not intended to replace a general appeal, *see* Wash.Rev.Code § 10.95.130(1) (1991); *State v. Dodd,* 838 P.2d at 100, and ordinarily the court will turn to its mandatory sentence review, as in Campbell's case, after having reviewed the defendant's assignments of error. By the time the court addresses the specific inquiry regarding passion and prejudice, it has already determined that (1) any claims raised by the defendant do not warrant reversal, (2) sufficient evidence supports the jury's finding of insufficient mitigating circumstances to merit leniency, and (3) the death sentence is neither excessive nor disproportionate. Wash.Rev.Code §§ 10.95.130(2)(a), (b) (1991). In Campbell's case, the court had already determined that there was overwhelming evidence of Campbell's guilt, a multitude of objective, specific aggravating factors warranting a death sentence, and insufficient mitigating factors to warrant leniency. These conclusions necessarily refute any contention that the sentence was brought about by passion or prejudice. Consequently, it is not troubling that the court's opinion did not dwell on the statutory inquiry as to prejudice at length. State law does not appear to require the court to engage in a complete rehash of the analysis it has conducted to this point when it reaches the passion and prejudice inquiry. The amount of ink expended in disposing of an issue bears no necessary correlation with the degree of care lavished upon it in reaching that conclusion. Justice Utter's dissent discussed at length the possibility that passion and prejudice affected Campbell's sentence, further assurance that the court's attention was directed to the issue. *See* 691 P.2d at 955–57.

---

**13.** Section 10.95.120(6) requires the report to indicate:

(a) Whether the race and/or ethnic origin of the defendant, victim, or any witness was an apparent factor at trial;

(b) What percentage of the county population is the same race and/or ethnic origin of the defendant;

(c) Whether members of the defendant's or victim's race and/or ethnic origin were represented on the jury;

(d) Whether there was evidence that such members were systematically excluded from the jury;

(e) Whether the sexual orientation of the defendant, victim, or any witness was a factor in the trial;

(f) Whether any specific instruction was given to the jury to exclude race, ethnic origin, or sexual orientation as an issue;

(g) Whether there was extensive publicity concerning the case in the community;

(h) Whether the jury was instructed to disregard such publicity;

(i) Whether the jury was instructed to avoid any influence of passion, prejudice, or any other arbitrary factor when considering its verdict or its findings in the special sentencing proceeding;

(j) The nature of the evidence resulting in such instruction; and

(k) General comments of the trial judge concerning the appropriateness of the sentence considering the crime, defendant, and other relevant factors.

Wash.Rev.Code § 10.95.120(6) (1990).

**524**

In this context, we do not find the court's comments noting no evidence was presented and addressing only the possible impact of community publicity indicative of a failure to conduct the requisite review. The court consistently addresses the passion and prejudice inquiry in summary fashion, *see Dodd,* 838 P.2d at 99; *Rice,* 757 P.2d at 917; *Rupe,* 743 P.2d at 230, and it is not for us to question the Washington Supreme Court's interpretation of its statutory duty. Nor can we conclude that the court's review was so deficient as to render the entire sentencing determination, which we have repeatedly upheld in the face of more focussed attacks, unconstitutional. We hold that if there were any shortcoming in the direct appellate review Campbell received as a matter of state law, which we doubt, it was not of constitutional magnitude.

VI

Cause and Prejudice

■ Campbell argues that the district court erred in dismissing his claims as successive and abusive without holding an evidentiary hearing. To avoid the bar to further federal review raised by an abusive claim, a habeas petitioner must show cause for his failure to raise the claim earlier and actual prejudice therefrom. *McCleskey v. Zant,* 499 U.S. at ——, 111 S.Ct. at 1470. In the context of a successive claim, an inquiry into cause and prejudice would appear to be unnecessary, because a successive claim by definition has been raised before.[14] The Supreme Court has said, however, that a petitioner may obtain review of a successive claim upon a showing of cause and prejudice. *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). To justify review of a successive claim, we must construe "cause" to also mean cause for

bringing a petition that fails to present a new ground for relief. In other words, a petitioner must show cause for seeking review of the same claim twice—such as the discovery of new facts, or an intervening change in the law, that warrants reexamination of the same ground for relief raised in an earlier petition.

■ No evidentiary hearing is necessary if the district court determines as a matter of law that a petitioner cannot satisfy the standard. *McCleskey,* 499 U.S. at ——, 111 S.Ct. at 1470. The district court determined that Campbell could not show cause. As our decision demonstrates, we agree. The factual bases for his claims are events at trial that have been known to him from the outset; the legal bases are well-established legal principles. The district court did not err in foregoing an evidentiary hearing.

■ Where a petitioner cannot establish cause, we may nevertheless review successive or abusive claims where the ends of justice require an opportunity for the petitioner to relitigate claims previously decided against him. *Kuhlmann v. Wilson,* 477 U.S. 436, 444–45, 106 S.Ct. 2616, 2621–22, 91 L.Ed.2d 364 (1986). The "ends of justice" permit us to entertain successive or abusive claims only where a petitioner supplements his constitutional claims with a "colorable showing of factual innocence." 477 U.S. at 454, 106 S.Ct. at 2627. Where a petitioner alleges error at a capital sentencing proceeding, rather than at the trial of the capital offense, he must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty under [Washington] law." *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2523.[15]

■ Neither Campbell's claims of deficient jury instructions nor those of improper

---

**14.** *"Cause" is generally meant to refer to cause for failure to comply with a state procedural rule, see Wainwright v. Sykes, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977), or cause for failure to raise a claim in an earlier habeas petition, see McCleskey v. Zant, 499 U.S. at ——, 111 S.Ct. at 1470.*

**15.** *Sawyer v. Whitley overrules the prior rule in this Circuit that to meet the "ends of justice" or "actual innocence" requirement, a petitioner need only show that "it is more probable than*

not that, but for constitutional error, the sentence of death would not have been imposed," which showing may extend to mitigating factors as well. *Deutscher v. Whitley,* 946 F.2d 1443, 1446 (9th Cir.1991), *vacated for reconsideration in light of Sawyer v. Whitley,* —— U.S. ——, 113 S.Ct. 367, 121 L.Ed.2d 279 (1992). We need not consider whether *Sawyer* announces a new rule within the meaning of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), as we conclude that Campbell fails to meet our prior, more lenient standard as well.

prosecutorial argument during the penalty phase bear on the question of his eligibility for capital punishment. Both claims go to the jury's consideration of the existence or lack of sufficient mitigating circumstances to warrant a sentence of life imprisonment. Moreover, Campbell has expressly disclaimed any attempt to meet the "actual innocence" exception.

### Conclusion

We find no abuse of discretion in the district court's dismissal of Campbell's claims regarding the jury instructions as successive and the prosecutor's remarks as an abuse of the writ. We agree with the district court that "Mr. Campbell's claims are nothing more than restatements of, and variations on, the constitutional arguments which have previously been examined at every level of available review. The interests of justice are not furthered by continuous reexamination of these issues." Although the district court abused its discretion in dismissing the claim of inadequate appellate review as successive, we conclude that the claim is meritless.

**AFFIRMED.**