**Keith Daniel WILLIAMS,
Petitioner–Appellant,**

v.

**Arthur CALDERON, Warden,
San Quentin State Prison,
Respondent–Appellee.**

No. 96–99009.

United States Court of Appeals,
Ninth Circuit.

Argued April 30, 1996.

Submitted May 1, 1996.

Decided May 1, 1996.

Richard B. Mazer, San Francisco, California, and David A. Nickerson, Sausalito, California, for petitioner-appellant.

J. Robert Jibson, Supervising Deputy Attorney General, Sacramento, California, for respondent-appellee.

Before: POOLE, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

Keith Daniel Williams is a California state prisoner who has been sentenced to death. His execution is scheduled for May 3, 1996, at 12:01 a.m. Williams has filed a second federal habeas petition in the district court.[1] The district court relied upon the Antiterrorism and Effective Death Penalty Act of 1996, 142 Cong. Rec. H3305–01 (1996) (to be codified at 28 U.S.C. § 2261) (Act), and ruled it lacked jurisdiction to hear the second petition without this court granting an order authorizing the filing of the second petition as required by section 2244(b)(3)(A) of the Act. The district court also concluded the Act required dismissal of Williams's claims.

---

**1.** The district court referred to Williams's latest petition as his third and fourth petitions. After Williams filed his first federal habeas petition in 1989, he filed an amended petition. The district court refers to this amended petition as Williams's second petition. The district court refers to Williams's latest petition filed April 22, 1996, and his amended petition filed April 26, 1996 as Williams's third and fourth petitions. For purposes of clarity, we refer to Williams's latest petition and amendment as Williams's second petition.

Alternatively, the district court ruled that if the Act did not apply retroactively to Williams's case, Williams failed to show cause and prejudice for bringing his successive and abusive claims, and denied his habeas petition.

We hold that the district court had jurisdiction to entertain Williams's second petition without first obtaining an authorization order from this court under section 2244(b)(3)(A) of the Act, because we treat the entirety of Williams's second petition filed in the district court as having been filed before the Act was signed into law.

We do not decide whether the remainder of the Act governs Williams's second petition. Even if the remainder of the Act applies to Williams's case, it does not enhance his ability to obtain federal habeas relief.

We conclude Williams's second petition raises both successive and abusive claims, and Williams has failed to demonstrate cause and prejudice for raising these claims at this late date, nor has he shown that a miscarriage of justice would result from our refusal to review these claims. We, therefore, affirm the district court's denial of Williams's petition for a writ of habeas corpus, and we deny his application for a stay of execution. We also deny Williams's motion to recall our mandate in *Williams v. Calderon,* 52 F.3d 1465 (9th Cir.1995).

## BACKGROUND

In September 1978, Williams and Robert Tyson robbed a couple, stealing their camper and its contents, including a checkbook. In October 1978, Williams, Tyson, and others held a garage sale to sell, among other things, the contents of the camper. Miguel Vargas and Lourdes Meza attended the garage sale and Miguel expressed an interest in selling his car to Williams and buying a gun from Williams which Williams had previously stolen from his employer.

The next day, Miguel and Meza returned to Williams's home to complete the sale of the car. A check that had been stolen from the camper was used to buy the car. After Miguel and Meza left, Williams formed a plan to go to Miguel and Meza's home to rob them, to retrieve the check, and to kill them.

The following day, Williams and Tyson, armed with fully loaded weapons, arrived at Miguel's and Meza's home. Miguel, Meza, and Salvador Vargas were at their home. Williams shot and killed Miguel and Salvador and then left the home with Tyson and Meza. After having intercourse with Meza in the car, Williams drove to an abandoned field and killed her, leaving her body in the field. During this time, Williams was under the influence of alcohol, morphine, codeine, heroin, and marijuana.

Williams was charged with three counts of murder, with special circumstances under California's 1977 death penalty statute. Williams pleaded not guilty by reason of insanity. After Williams was examined by two psychiatrists and found sane, his defense proceeded on a theory of diminished capacity. In 1979, a jury found him to be sane, convicted him on the three counts of murder, found nine of ten special circumstances true, and returned a sentence of death.

The California Supreme Court affirmed Williams's direct appeal and denied his first habeas corpus petition which had been consolidated with his automatic appeal. *People v. Williams,* 44 Cal.3d 883, 245 Cal.Rptr. 336, 751 P.2d 395 (1988). The United States Supreme Court denied Williams's petition for certiorari. *Williams v. California,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 237 (1988).

Williams then filed a second petition for habeas corpus relief with the California Supreme Court. The California Supreme Court denied this second petition in an unpublished decision.

In 1989, Williams filed his first federal petition for a writ of habeas corpus. The district court denied this petition on the merits. *Williams v. Vasquez,* 817 F.Supp. 1443 (E.D.Cal.1993). We affirmed. *Williams v. Calderon,* 52 F.3d 1465 (9th Cir.1995). We also denied Williams's request for rehearing and suggestion for rehearing en banc.

On February 20, 1996, the Supreme Court denied Williams's petition for certiorari. —— U.S. ——, 116 S.Ct. 937, 133 L.Ed.2d 863

(1996). Williams's execution date was then scheduled for May 3, 1996, at 12:01 a.m.

After Williams's execution date was set, Williams filed a another habeas corpus petition with the California Supreme Court on April 22, 1996, and requested a stay of execution. In this petition, Williams raised four new claims. On April 26, 1996, the California Supreme Court denied this petition and denied Williams's request for a stay of execution. The California Supreme Court denied the first three claims as untimely and denied all the claims on the merits.

Contemporaneous with Williams's filing of his petition before the California Supreme Court on April 22, 1996, Williams filed a second federal petition with the district court. In this petition, Williams asserted two claims which we and the district court had previously rejected. He argued the discovery of new evidence justified bringing the successive claims. He also sought leave to amend his petition after exhausting the four new claims which were then pending before the California Supreme Court.

After Williams filed his second petition with the district court, President Clinton, on April 24, 1996, signed the Act. When the California Supreme Court dismissed Williams's four claims which previously had been unexhausted, he filed an amended petition in the district court on April 26, 1996. In this amended petition, Williams realleged the two claims he filed in his second petition before enactment of the Act, as well as the four previously unexhausted claims. The district court determined that the Act governed Williams's second petition, both as to the two claims filed before enactment of the Act and as to the four previously unexhausted claims which were filed after enactment of the Act as part of the amended petition.

With regard to the two claims Williams filed before enactment of the Act, the district court concluded the Act required dismissal of those claims. Alternatively, the district court dismissed the claims under the prior law because Williams had not shown cause or prejudice or a miscarriage of justice to justify again raising these claims.

With regard to the four new claims, the district court also concluded the Act required their dismissal. Alternatively, the district court determined that under the prior law an independent and adequate state procedural ground barred review of three of the claims, the fourth claim was abusive and Williams had not shown cause or prejudice or a miscarriage of justice to justify raising the claims at this late date. As a result, the district court dismissed Williams's latest petition in its entirety. The district court also denied Williams's request for a stay of execution and declined to issue a certificate of probable cause.

On April 30, 1996, Williams appealed to this court. Williams requests a certificate of probable cause. He also appeals the district court's dismissal of his habeas petition and requests a stay of execution. Finally, he moves for an order recalling our mandate that issued following the filing of our opinion in *Williams v. Calderon,* 52 F.3d 1465 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 937, 133 L.Ed.2d 863 (1996).

## DISCUSSION

A.  Effect of the Antiterrorism and Effective Death Penalty Act of 1996

■ The Antiterrorism and Effective Death Penalty Act was signed into law by President Clinton on April 24, 1996. Section 2244(b)(3)(A) of the Act provides:

> Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

The two claims Williams filed in the district court on April 22, 1996 were filed before the Act was signed into law. As to these claims, therefore, section 2244(b)(3)(A) would not apply to Williams's case, and no advance approval of this court would be required to authorize the filing of that petition. The four claims which Williams added by his amended petition filed after enactment of the Act pose more of a problem. We need not, however, adopt a holding in this case that habeas claims added by amendment to a petition

which was on file when the Act was enacted may be considered under the law as it existed prior to enactment. We can instead simply treat Williams's new claims as part of his earlier filing, because even giving him the benefit of the more favorable pre-enactment law, we deny his claims.

There is one final matter which affects our review of the district court's order denying Williams's habeas petition. The Act contains new standards governing the issuance of a certificate of appealability of an order denying a second habeas petition. Prior law required a certificate of probable cause.

Section 2253(c)(2) of the Act provides, "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." The standard for obtaining a certificate of appealability under the Act is more demanding than the standard for obtaining a certificate of probable cause under the law as it existed prior to enactment of the Act.

We need not decide whether to apply the Act's more demanding standard retroactively to Williams's case. Rather, we assume, without deciding, that section 2253(c)(2) of the Act does not apply retroactively to Williams's case.[2] We, therefore, grant a certificate of probable cause to permit Williams to appeal the district court's denial of his writ of habeas corpus.

### B. Standard of Review

■ We review for an abuse of discretion the district court's decision not to review the merits of claims when the claims are abusive or successive. *Campbell v. Blodgett,* 997 F.2d 512, 516 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 1337, 127 L.Ed.2d 685 (1994). The district court abuses its discretion if the court's decision is based on "an erroneous legal conclusion or on a clearly erroneous finding of fact." *Id.*

### C. Successive Claims

In this second petition, Williams asserts two claims which we addressed and rejected in his first petition. *Williams,* 52 F.3d at 1469–72, 1474–75. Williams again alleges (1) he received ineffective assistance of counsel at both the guilt and penalty phases because his trial counsel did not obtain or present evidence of his mental impairments, including an alleged bipolar mood disorder; and (2) prosecutors made an alleged undisclosed death penalty deal with his codefendant, Robert Tyson.

■ These claims are successive. *See Campbell,* 997 F.2d at 515–16. "[A] different factual basis or argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief and is successive." *Id.* at 516.

■ We are precluded from reviewing the merits of these successive claims unless Williams can demonstrate cause and prejudice or show that a miscarriage of justice would result if we failed to review them. *Sawyer v. Whitley,* 505 U.S. 333, 338–39, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992).

■ In the context of successive claims, Williams must show cause for asserting a claim that "fails to present a new ground for relief." *Campbell,* 997 F.2d at 524. Cause requires Williams to show that "some objective factor external to the defense" impeded his ability to present the evidence in the prior petition. *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1469, 113 L.Ed.2d 517 (1991). The standard of cause focuses on Williams's conduct. *Id.* at 498, 111 S.Ct. at 1472. Williams has an obligation to "conduct a reasonable and diligent investigation aimed at including all relevant ... grounds for relief in the first federal habeas petition." *Id.*

■ Williams argues he has established cause for raising his successive claim of ineffective assistance of counsel because he recently obtained new evidence which further supports this claim. He asserts that, in preparation for his first habeas petition, his habeas counsel wrote in 1984 to the Federal Bureau of Prisons (Bureau) and requested Williams's medical and psychiatric records

---

**2.** We note that the Act does not provide an effective date for the general habeas provisions, which include section 2253(c)(2). The part of the Act relating specifically to capital cases, however, states that part applies to pending petitions.

while incarcerated at the Terminal Island and Lompoc facilities; in response, the Bureau turned over approximately 21 documents. In February 1996, his counsel again wrote the Bureau and requested "all records." He contends the Bureau stated there was no record Williams had been confined in the federal prison system. Knowing this was false, his counsel again requested records and, Williams contends, the Bureau then released approximately 600 pages of documents, including numerous medical and psychiatric records. Williams contends these records support his diminished capacity defense.

Of the approximately 600 pages of documents, Williams attached only 84 pages as exhibits to his petition in the district court. Of these 84 pages, many, if not most, are not medical or psychiatric records. The attached pages include a letter from Williams's mother, presentence reports, work reports, a certificate that indicates Williams successfully completed a "transactional analysis" class, probation violation reports, a meritorious service award, pages with only dates stamped on them, and educational tests.

Even assuming the Bureau failed to release all of Williams's medical and psychiatric reports, we conclude Williams has not demonstrated cause. As his counsel conceded at oral argument, Williams himself has known for years, presumably since at least 1984, that more Federal Bureau of Prisons records must have existed than those turned over at that time. In fact, it was Williams's belief in this regard that prompted his attorneys in 1991—almost five years ago—again to seek these records. When they received a response they knew to be false—"we have no record of this individual," they did nothing for over four years until February 1996. This dilatory approach to pursuing the records Williams knew must be there hardly shows a "reasonable and diligent investigation" on his part.

Moreover, the pages he now proffers reveal only that he has epilepsy and he takes dilantin for his epileptic seizures; is anxious, angry, and antisocial; had an unstable and unhappy childhood; has experienced blackouts; has a head injury from a motorcycle accident; and has an extensive history of alcohol and drug abuse. Williams presented similar information in his first federal petition. Simply because Williams has obtained additional information which, minimally at best, may corroborate his ineffective assistance claim does not constitute cause.[3]

Because Williams has not demonstrated cause for his successive ineffective assistance of counsel claim, we need not consider prejudice.

■ Williams's second claim for habeas relief is that he has obtained newly discovered evidence which, according to him, "conclusively" establishes that the prosecutor made a deal with his codefendant, Robert Tyson. Williams alleges that the prosecution agreed not to seek the death penalty against Tyson if Tyson agreed to testify against Williams.

Williams raised this identical claim in his first federal petition. *Williams,* 52 F.3d at 1474–75. The alleged newly discovered evidence consists of a declaration from Tyson's ex-wife, Karen Tyson; a declaration from the prosecutor, Larry Howard; and an unsigned declaration from Michael Sofranek, a correctional officer, stating that Tyson "had agreed to make a deal with the District Attorney to turn state's evidence."

Williams makes no attempt to demonstrate cause for his failure to obtain Howard's declaration before this late date. During his first federal petition, Williams deposed Howard because Howard was medically unavailable to testify at the evidentiary hearing before the district court. *Williams,* 817 F.Supp. at 1456 n. 10. In Howard's first declaration before the district court, he denied making such a deal.[4] *Id.* at 1456.

3. The new pages suggest Williams made a good adjustment to prison life during his previous incarceration. This fact, however, even in combination with the additional medical and psychiatric evidence the new pages disclose, pales in comparison to the overwhelming evidence of Williams's careful planning, methodical execu-

tion of that plan, and the ruthless murders of his three victims. *See Williams,* 52 F.3d at 1472 n. 7.

4. We also note that the veracity of the Howard declaration submitted by Williams is questionable. In a declaration in response to Williams's

With regard to Sofranek's declaration, Williams asserts it was "well known" within the sheriff's department that Tyson agreed to testify "in exchange for favorable treatment." He gives no explanation as to why he could not obtain this alleged information before this late date.[5]

With regard to the declaration of Karen Tyson, Williams states he had difficulty locating her. He does not adequately explain how Karen Tyson was not found for years, but then was suddenly found days before his scheduled execution.

We conclude Williams has failed to show cause for failing to include in his earlier petition the information he presents as "newly discovered evidence" in this successive petition. Because he has failed to demonstrate cause, we need not consider prejudice.

## D. Abusive Claims

Williams raises four claims which he did not raise in his first federal petition. These four claims are: (1) the introduction of Karen Tyson's testimony which was allegedly coerced, involuntary, and unreliable deprived Williams of a fair trial; (2) the prosecutor's failure to reveal alleged benefits given to Karen Tyson violated Williams's due process rights; (3) the alleged forced medication of Williams before and during his trial and the trial court's failure to conduct an inquiry into the necessity of this medication violated Williams's due process rights; and (4) the prosecutor's alleged failure to reveal certain evidence violated Williams's due process rights. We conclude these four new claims constitute an abuse of the writ.

■ Williams abuses the writ if he raises any new claims in his current petition that could have been raised in his first petition. *McCleskey*, 499 U.S. at 489, 111 S.Ct. at 1467. Under *McCleskey*, the State must

specify the claim that appears for the first time in a subsequent petition. *Id.* at 494, 111 S.Ct. at 1470. If the State satisfies this burden, Williams must demonstrate cause and prejudice for failing to raise the new claim in his first petition or show that a miscarriage of justice would occur if we failed to review the merits of the claim. *Id.*

The State has sufficiently identified the claims raised for the first time as part of Williams's amended second petition and Williams admits he has not previously raised these four claims. Therefore, our review of the merits of these claims is barred by the abuse of the writ doctrine, unless Williams can establish cause and prejudice for failing to assert these claims in his first petition which he filed in 1989, or demonstrate a miscarriage of justice would result if we refused to review them.

■ Williams's first two claims rely on the recently obtained declaration of Karen Tyson. As discussed above, Williams has not demonstrated cause for failing to present this information earlier. Williams had years to locate Karen Tyson, but did not do so until days before his scheduled execution. Williams does not adequately explain why Karen Tyson was not located before this late date.

■ In his third claim, Williams asserts that the jail staff gave him valium three times a day before and during his trial. Williams contends the trial court was aware that Williams was provided such medication, but did not conduct an inquiry into the necessity for it. Again, Williams offers no plausible explanation as to why he could not have raised this claim in his first petition. Williams does not state that he was not aware he was given valium or that this affected his memory to such an extent that he did

second petition, Howard submitted a declaration stating that an investigator for Williams befriended him after Howard became ill. According to Howard, the investigator eventually presented the declaration to Howard and assured him the declaration reiterated what Howard had already stated in his first deposition. Howard states in his latest declaration that his declaration submitted by Williams incorrectly implies that he made a deal with Robert Tyson and that he could have

sought the death penalty for Tyson. Howard emphasizes that he did not make such a deal with Tyson.

5. We also note that Sofranek does not state how he learned of this information. He states only that it was common knowledge. His statement, therefore, amounts to hearsay.

not realize or learn until this late date that he had been given valium.

 Williams's fourth claim again involves the Bureau's alleged failure to turn over the approximately 600 pages of documents which include some additional medical and psychiatric reports. Williams asserts that in response to an earlier request a federal case worker turned over certain documents to an investigator for the District Attorney's office, but these documents were not turned over to Williams. He speculates that these documents were the documents recently released by the Bureau. Williams argues that the failure to turn these documents over to the defense violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As discussed above, Williams has failed to demonstrate cause for his failure to present this information earlier.

Because Williams has failed to demonstrate cause for failing to raise the four claims he asserts for the first time in his amended second petition, we need not consider the question of prejudice.

**E. Actual Innocence of the Death Sentence**

 Williams does not contend he is factually innocent of the murders. To the extent he contends he is innocent of the death sentence, this claim lacks merit. To demonstrate that he is actually innocent of the death sentence, Williams must "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under applicable state law." *Sawyer*, 505 U.S. at 336, 112 S.Ct. at 2517. We have carefully reviewed the record and conclude Williams has not made such a showing.

**F. Motion to Recall the Mandate**

 On April 30, 1996, Williams filed a motion to recall our mandate in *Williams v. Calderon*, 52 F.3d 1465 (9th Cir.1995), so that we could rehear the case en banc. Williams makes this request because, he argues, his newly discovered evidence dramatically af-

fects our analysis of his claims that we previously rejected. We disagree.

 We have the inherent authority to recall our mandate and to assume jurisdiction over a closed appeal. *Zipfel v. Halliburton Co.*, 861 F.2d 565, 567 (9th Cir.1988). We, however, will recall our mandate only in "exceptional" cases, when good cause exists or when necessary to prevent injustice. *Id.; Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1530 (9th Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990). This is not such a case.

### CONCLUSION

Williams's application for a stay of execution is DENIED. The district court's dismissal of his habeas corpus petition is AFFIRMED.

Williams's motion to recall our mandate in case No. 93–99006, *Williams v. Calderon*, 52 F.3d 1465 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 937, 133 L.Ed.2d 863 (1996) is DENIED.